UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

enXco Development Corporation,

      Plaintiff,

v.                                                    **MEMORANDUM OPINION
AND ORDER**
Civil No. 11-1171

Northern States Power Company,

      Defendant.

_____

      Joel A. Mullin, Jonathan C. Miesen, Marc A. Al, and John J. Brogan, Stoel Rives LLP, Counsel for Plaintiff.

      Deborah A. Ellingboe and Charles F. Webber, Faegre & Benson LLP, Counsel for Defendant.

_____

      This matter is before the Court on Defendant Northern States Power Company's ("NSP") motion to dismiss.

**Factual Background**

      Plaintiff enXco Development Corporation ("enXco") is a company that is involved with renewable energy products, including solar and wind projects. (Complaint ¶ 5.)  NSP is an electric and natural gas company, and a subsidiary of Xcel Energy, Inc.  ("Xcel").  (Id. ¶ 6.)

1

enXco developed certain property located in Dickey and McIntosh Counties, North Dakota, for the purpose of developing a wind energy generation project that would be capable of supporting the installation and operation of one hundred 1.5 megawatt wind turbine generators, which is referred to as the Merricourt Project.  (Id. ¶ 7.)  On October 24, 2008, the parties entered into a Developed Wind Project Purchase and Sale Agreement for the Merricourt Project (the "PSA") wherein enXco agreed to sell enXco's wind energy development assets, including real property, to NSP for $15,000,000.  (Id. ¶ 8.)

The parties also entered into a separate Engineering Procurement and Construction Agreement (the "EPC Agreement") under which NSP agreed to pay enXco $353,500,000 for engineering, procurement of necessary infrastructure, construction, commissioning, start-up and testing of the Merricourt Project.  (Id. ¶ 9.)

As a consequence of the state of the country's economy, enXco asserts there was a lower demand for electricity, which in turn caused investor-owned utilities such as Xcel to reconsider their commitments to wind projects under contract and to terminate wind projects similar to the Merricourt Project.  (Id. ¶ 11.)  By 2010, enXco alleges that NSP determined it would be financially advantageous to

terminate the PSA and the other agreements related to the Merricourt Project.

(Id.)

During the development of the Merricourt Project, enXco contracted with

KLJ, an engineering and environmental consulting firm to assist with

environmental assessments.  (Id. ¶ 12.)  KLJ contacted the United States Fish and

Wildlife Service ("USFWS") to request information related to the development of

the Project.  (Id. ¶ 13.)  The USFWS later provided comments concerning

measures to be taken to mitigate the Project's impact on migratory birds,

specifically whooping cranes and the piping plover.  (Id. ¶ 14.)  enXco asserts it

followed all of the USFWS's recommendations, and maintained contact with the

USFWS regarding its plans for development of the site.  (Id. ¶ 16.)  Later, in

February 2010, the USFWS provided enXco specific recommendations concerning

the whooping crane.  In response, enXco used underground power lines, where

feasible, and installed visual marking devices for overhead lines.  (Id. ¶ 17.)

Although the USFWS had stated in its February 2010 letter that the risk of

lethal take to whooping cranes as a result of the Merricourt Project was

unknown, the USFWS asserted that it believed an adverse effect to whooping

cranes was likely.  (Id. ¶ 19.)  The USFWS then recommended that the Project not

commence construction until enXco has applied for and received an Incidental

Take Permit ("ITP").  (Id.)

enXco alleges that although the potential for adverse impacts from

development projects is not unique, NSP used the USFWS's February 2010 letter

concerning the whooping cranes to be a breach of representations and warranties

contained in the PSA.  At that time, NSP also provided notice of a "Material

Adverse Effect" under the PSA.  (Id. ¶ 21.)

In response, enXco advised NSP that an ITP is not a Seller Permit for the

Merricourt Project, that NSP's contention of alleged breaches of the PSA were

premature and that there had been no breach.  (Id. ¶ 25.)  In the meantime, enXco

continued to work under the PSA to satisfy all conditions necessary in order to

close the PSA.  (Id. ¶ 26.)

By December 2010, enXco alleges that USFWS, for the first time,

recommended that enXco obtain a separate project-specific ITP based on the

belief that "take of piping plovers due to turbine strikes is likely at some point in

the life of the project . . . " (Id. ¶ 27.)  On March 4, 2011, NSP asserted that the

USFWS letter suggesting that enXco obtain an ITP for the piping plover

constituted a material adverse effect under the PSA.  (Id. ¶ 28.)  On March 31,

4

2011, the USFWS issued a letter that confirmed that enXco's proposed habitat

conservation efforts would compensate for any adverse effect on the whooping

crane, and avoided the critical habitat of the piping plover and that measures

proposed by enXco pending the issuance of an ITP would reduce the likelihood

of lethal take of piping plover due to turbine strikes.  (<u>Id.</u> ¶ 29.)

Meanwhile, the Long-Stop date for closing the PSA was March 31, 2011.

(<u>Id.</u> ¶ 30.)  On April 1, 2011, NSP terminated the PSA alleging the potential take

of whooping cranes and piping plovers constituted a material adverse effect

under the PSA.  NSP further alleged that the possibility of limited voluntary

curtailment related to piping plovers pending the issuance of an ITP constituted a

material adverse effect.  (<u>Id.</u> ¶ 31.)  In addition, NSP asserted that a delay by the

State of North Dakota Public Services Commission ("NDPSC") in issuing a

certificate of site compatibility constituted a material adverse effect under the

PSA.  (<u>Id.</u>)

Because NSP terminated the contracts, enXco brought this action, asserting

three counts: Declaratory Judgment; Breach of Contract (Specific Performance)

and Breach of Contract.

**Standard for Motion to Dismiss/Failure to State a Claim**

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a party may move the Court to dismiss a claim if, on the pleadings, a party has failed to state a claim upon which relief may be granted.  In reviewing a motion to dismiss, the Court takes all facts alleged in the complaint to be true.  Zutz v. Nelson, 601 F.3d 842, 848 (8th Cir. 2010).

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.  Thus, although a complaint need not include detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.

Id. (citations omitted).

**Analysis**

NSP argues that this action must be dismissed as enXco cannot state a claim for breach of contract.  The contracts at issue provided a deadline, or Long-Stop Date, by which certain conditions had to be met.  If such conditions precedent were not completed by that time, NSP had the right under the contracts to terminate.

As indicated above, the PSA had a Long-Stop Date of March 31, 2011.  (Id.

Ex. A § § 1.1, 2.3.1.)  Article 3, Buyer's Condition Precedent to Closing, provides

for various conditions that enXco must satisfy prior to the Long-Stop Date.  (Doc.

No. 18, PSA, Art. 3 at 15-22.)  "The obligation of Buyer to consummate the

transactions contemplated by this Agreement shall be subject to fulfillment at or

prior to the Closing of each of the following conditions . . . " Article 10 of the PSA

provides that a party may terminate the PSA if the contract closing did not occur

by the Long-Stop Date or if the conditions precedent had not been satisfied by the

party responsible for these conditions or the other party waived the condition

prior to closing.  (Id. Art. 10.1(a)(i).)  One of the conditions precedent that enXco

was required to satisfy was delivery to NSP of a Certificate of Site Compatibility

from the NDPSC. (Id. Art. 3.7, Schedule 6.11-1.)

NSP argues that Minnesota law supports a contract provision that allows

one party to terminate when a condition precedent is not satisfied by a certain

date. See, e.g., Edina Dev. Corp. v. Hurrle, 670 N.W.2d 592, 595 (Minn. Ct. App.

2003); Appollo v. Reynolds, 364 N.W.2d 422, 425 (Minn. Ct. App. 1985).  NSP

asserts the relevant contract provisions are clear, and provide that NSP had the

right to terminate if enXco did not meet all conditions precedent.  NSP argues

that dismissal of the Complaint is therefore appropriate.

NSP further asserts that enXco admitted that NSP had the right to terminate the contracts in its request for an expedited hearing before the NDPSC. (Ellingboe Decl. Exs 1-2.)  At the hearing on enXco's request, enXco's attorney reiterated that the basis for its request was its contractual obligations with NSP. (Id. Ex. 3 at 7.)

enXco responds that it has properly stated a claim for relief, and the motion to dismiss should be denied.  enXco argues that its failure to obtain the Certificate of Site Compatibility should be excused by reason of a temporary impracticability.

enXco applied for the Certificate on October 6, 2010, and the NDPSC set it on for public hearing on December 21, 2010.  Because of a snowstorm, the hearing was postponed until February 10, 2011.  This hearing took place, but on March 17, 2011, the NDPSC determined that a new hearing was required, because the first hearing had not been held in the county in which the Merricourt Project was to be located.  (Comp. ¶ 31.)  enXco requested that the NDPSC hold the hearing on less than twenty days notice, to allow it to satisfy the March 31, 2011 deadline. Ultimately, the NDPSC denied the request for an expedited hearing, but issued a

Certificate of Site Compatibility on June 8, 2011.  (Peluso Decl, Ex. 2.)

The doctrine of temporary impracticability, or impossibility, requires the party asserting such defense to "show that the unforeseen event upon which excuse is predicated is due to factors beyond the party's control."  <u>Hoosier Energy Rural Elec. v. John Hancock Life</u>, 588 F. Supp. 2d 919, 931 (S.D. Ind. 2008) (quoting <u>Roth Steel Prod. v. Sharon Steel Corp.</u>, 705 F.2d 134, 149-50 (6th Cir. 1983)).  This doctrine only suspends the obligor's duty to perform during the time of impracticability, it does not discharge the duty.  <u>Id.</u> (quoting 30 Williston on Contracts § 77:103 (4th ed. 2008)).  Minnesota recognizes the doctrine of temporary impossibility of performance.  <u>Village of Minneota v. Fairbanks, Morse & Co.</u>, 226 Minn. 1, 12-13, 31 N.W.2d 920, 926 (1948).

In <u>Pac. Trading Co. v. Mouton Rice Milling Co.</u>, 184 F.2d 141, 148 (8th Cir. 1950) the Eighth Circuit referred to the doctrine as the "doctrine of frustration" and recognized that the doctrine required the court to look at "whether performance after the delay caused by the act of the sovereign would be substantially different from that contracted for."  If the delay "imposes a substantially greater burden on the promisor than that intended by the parties" the doctrine should not be applied to excuse they delay.  <u>Id.</u>  The court further

9

noted that application of the doctrine will depend on the intention of the parties and the circumstances surrounding the execution.  Id.  See also Am. Fed. of Grain Millers, A.F. of L. v. Gen-Probe. Mills, 117 F. Supp. 340, 342 (D. Minn. 1953) (applying doctrine of impossibility of performance).

In this case, enXco has alleged its ability to obtain the Certificate of Site Compatibility was temporarily made impossible due to the acts of the NDPSC. In addition, enXco argues that NSP suffered no prejudice from the temporary delay.  enXco now has the Certificate, and but for NSP terminating the contracts, enXco could have met all of its obligations thereunder.

NSP argues that under Minnesota law, "a promise which cannot be performed without the consent or cooperation of a third party is not excused because of the promisor's inability to obtain such cooperation."  St. Paul Dredging Co. v. State, 107 N.W.2d 717, 723 (Minn. 1961) (in addressing post trial motions, court found that State was not excused under contract for inaction of third party).  NSP further argues that the doctrine of impracticability is only invoked where unforeseen events produce an excessive hardship on one of the parties which was not reasonably contemplated.  Powers v. Siats, 70 N.W.2d 344, 348 (Minn. 1955).  See also First Nat'l Bank of Shakopee v. Edison Homes, Inc.,

10

415 N.W.2d 442, 444 (Minn. Ct. App. 1987) (refusing to apply doctrine of

impossibility to an unambiguous contractual provision.)  NSP argues that

encountering obstacles in obtaining a permit from a governmental agency is not

only foreseeable, but is commonplace.  See Nebaco, Inc. v. Riverview Realty Co.,

Inc., 482 P.2d 305, 307 (Nev. 1971); Mortenson v. Scheer, 957 P.2d 1302 (Wy. 1998)

(finding that an obligor is expected to provide in the contract for contingencies

that are foreseeable, such an the need to obtain a government license or permit).

See also Harvey v. Lake Buena Vista Resort, LLC, 306 Fed. Appx. 471, 2009 WL

19340 (11th Cir. 2009).

NSP further argues that enXco was at fault for failing to secure the

Certificate of Site Compatibility by not timely initiating the application for the

permit.  The doctrine of impossibility does not apply where the impossibility was

self created.  In re Mr. Movies, 287 B.R. 178 (Bankr. D. Minn. 2002) (citing

Restatement (Second) of Contracts § 261).  Here, the PSA was entered into in

October 2008, yet enXco waited until October 2010 to file the application for the

Certificate of Site Compatibility.

Whether the delay in obtaining the Certificate of Site Compatibility was

reasonably foreseeable or whether enXco was at fault are fact questions that need not be decided at this time.  Because the doctrine of temporary impracticability or impossibility is an available defense under Minnesota law, the Court finds that NSP's motion to dismiss based on enXco's failure to satisfy certain conditions precedent will be denied.[1]

**IT IS HEREBY ORDERED** that Defendant NSP's Motion to Dismiss [Doc. No. 7] is DENIED.

Date: November 8, 2011

s/ Michael J. Davis
Michael J. Davis
Chief Judge
United States District Court

---

[1] enXco also argued that dismissal was not warranted based on a forfeiture defense as well as a breach by NSP.  The Court need not address those arguments in ruling on the merits of NSP's motion.

12