UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

enXco Development Corporation,

       Plaintiff,

v.

         **MEMORANDUM OPINION
AND ORDER**
Civil No. 11-1171

Northern States Power Company,

       Defendant.

_____

       Marc A. Al, Margaret E. Dalton, Joel A. Mullin and Steven T. Lovett, Stoel Rives LLP, Counsel for Plaintiff.

       Charles F. Webber, David J.F. Gross, Deborah A. Ellingboe, Amanda J. Rome, Jana M. Gaffaney, Molly J. Streiff and Blake J. Lindevig, Faegre Baker Daniels LLP, Counsel for Defendant.

_____

       This matter is before the Court on Defendant Northern States Power Company's ("NSP") motion for summary judgment [Doc No. 71], NSP's motion to exclude expert testimony of LeRoy Koppendrayer [Doc. No. 64] and Susan E. Wefald [Doc. No. 60] and Plaintiff enXco Development Corporation's ("enXco") motion to exclude expert testimony [Doc. No. 78].

1

I.      **Factual Background**

enXco[1] is the U.S. Subsidiary of EDF Energies Nouvelles, a multi-national

company that is involved with renewable energy products, including solar and

wind projects.  enXco has been involved in many renewable energy projects

throughout the United States.  (NSP Ex. 1 (Grimbert Dep. at 11).)  NSP, a

Minnesota corporation and a subsidiary of Xcel Energy, Inc. ("Xcel"), is an

electric and natural gas company that provides energy to customers in Minnesota

and the Dakotas.  (NSP Ex. 3.)

In October 2008, enXco and NSP entered into two contracts for the

development and purchase of a wind energy generation project in North Dakota,

referred to as the Merricourt Project.  (NSP Exs. 5 and 6.)  The first contract is the

Developed Wind Project Purchase and Sale Agreement (the "PSA") wherein

enXco agreed to sell its wind energy development assets, including real property,

to NSP.  (NSP Ex. 5.)  The second contract is the Engineering Procurement and

Construction Agreement (the "EPCA") through which NSP agreed to pay enXco

$353,500,000 for engineering, procurement of necessary infrastructure,

construction, commissioning, start-up and testing of the Merricourt Project.  (NSP

_____

[1]Now known as EDF Renewable Energy.

Ex. 6.)[2]  During the development of the Merricourt Project, enXco bore all the

risks associated with ownership.  (NSP Ex. 1 (Grimbert Dep. at 30, 90-91).)  Once

the parties closed on the PSA, ownership of the Merricourt site would be

transferred to NSP.  (NSP Ex. 7 (Peluso Dep. at 99); Ex. 5 (PSA "Recitals").)

The PSA includes certain conditions precedent that were to be completed

by the "Long-Stop Date" which was set for March 31, 2011.  (Ex. 5 (PSA §§ 1.1

(Definition of "Long-Stop Date"), 2.3.1).)   Article 3 provides that "[t]he

obligation of [NSP] to consummate the transaction contemplated by this

Agreement shall be subject to fulfillment at or prior to the Closing of each of the

following conditions . . ."  (Ex. 5 (PSA at 15).)  Relevant to this case, enXco was

required to deliver to NSP a "Permitting Opinion"[3] and to obtain and transfer to

NSP all final and non-appealable permits from the North Dakota Public Service

Commission ("NDPSC).  (Id. PSA at §§ 1.1 (Definition of "Permitting Opinion"),

---

[2]enXco executive Tristan Grimbert described the two contracts as follows: the PSA
covers the "development and the sell off of the project to be built, and the other one [EPCA] is
more of a construction contract, procurement, engineering and construction contract."  (NSP Ex.
1 (Grimbert Dep.  at 33).)

[3]A Permitting Opinion is defined as a legal opinion "that describes all material,
discretionary Permits required to develop, construct and to commence operation of the project,
and opines that with respect to each such material discretionary Permit it is legal, valid, binding
and enforceable in accordance with its terms, and is in full force and effect and is not subject to
any further appeal."

3.1.6, 3.7, 6.11 & Schedule 6.11.)  Pursuant to North Dakota law, one such required permit is the Certificate of Site Compatibility ("CSC"), which was required before construction for the Merricourt Project could begin.  N.D. Cent. Code § 49-22-02.[4]  Another condition precedent required that there had been no Material Adverse Effect ("MAE") or that any MAE had been cured by the Closing Date.  (NSP Ex. 5 (PSA § 3.5).)[5]

The PSA also provides that the parties shall use reasonable efforts "to obtain or assist in obtaining, all consents, approvals, transfers, permissions, waivers, orders, reissuances and authorizations of . . . all Authorities and other third parties which are required to be obtained or made by them in connection with the consummation of the transactions contemplated by this Agreement or in connection with the Project."  (Id. § 8.3.)

_____

[4]The purpose of the CSC requirement is "to ensure that the location, construction, and operation of energy conversion facilities and transmission facilities will produce minimal adverse effects on the environment and upon the welfare of the citizens of this state by providing that no energy conversion facility or transmission facility shall be located, constructed, and operated within this state without a certificate of site compatibility or a route permit acquired pursuant to this chapter."  N.D. Cent. Code § 49-22-02.

[5]Briefly, an MAE is defined as "any effect (or effects taken together) that is materially adverse to the present or future business, operations, assets, liabilities, properties, results of operations or condition (financial or otherwise) of the Project or the Property. . ." (Id. § 1.1 (Definition of "Material Adverse Effect").)

Either party could terminate the PSA, upon written notice to the other, in the event the Closing did not occur or the conditions precedent had not been fulfilled or waived on or before the Long-Stop Date.  (Id. § 10.1(a)(I).)

After the contracts were executed, enXco submitted a letter of intent to the NDPSC in December 2008 with respect to the CSC.  (NSP Ex. 12.)  Because North Dakota law provides that such a letter must be sent one year prior to the application for a CSC, enXco requested the NDPSC to waive this requirement to allow enXco to meet the construction schedule for the Merricourt Project.  (Id.) enXco further noted in its letter that it intended to file the application for a CSC in October 2009.  (Id.)  The request to shorten the waiting period was granted. (NSP Ex. 14.)  enXco did not, however, submit its application for a CSC until October 26, 2010.  (NSP Ex. 13.)

enXco asserts that the delay in filing the CSC application was due, in part, to the concerns raised by the United States Fish and Wildlife Service ("USFWS") about possible adverse effects of the wind project on two bird species.  Such concerns caused NSP to send enXco a letter dated May 20, 2010 as notice that NSP believed enXco was in breach of sections 6.6, 6.7 and 6.11 of the PSA and notice of an MAE based on a report from the USFWS of a possible adverse effect

to whooping cranes from the Merricourt Project.  (Dalton Decl., Ex. 23.)  The

referenced USFWS report dated February 10, 2010 recommended that "enXco not

commence project construction until they have applied for and receive an

Incidental Take Permit (ITP), if needed, from the Service in accordance with

Section 10(a)(1)(B) of the ESA [Endangered Species Act], pursuant to a regional or

project-specific HCP [habitat conservation plan]."  (Id.)

enXco's project development manager, Chris Sternhagen, testified at his

deposition that issues with the USFWS concerning the taking of two avian

species affected the locations of individual wind turbines, and that this issue

prevented enXco from submitting its CSC application earlier.  (NSP Ex. 8

(Sternhagen Dep. at 313).)  At a later deposition, however, he testified that the

layout of the turbines actually had "really played very little impact as to the

schedule." (NSP Ex. 21 (Sternhagen Dep. at 157).)

After submission of the CSC application in October 2010, the NDPSC

issued a "Notice of Filing and Notice of Hearing" on said application.  (NSP Ex.

26.)  The NDPSC also deemed the application complete.  (NSP Ex. 27.)  The

hearing was scheduled for December 21, 2010 to address whether the Merricourt

Project would produce minimal adverse effects on the environment and citizens

of North Dakota, whether the proposed facilities are compatible with environment preservation and the efficient use of resources, and whether the proposed facility locations minimize adverse human and environmental impact while ensuring that the energy needs are met and fulfilled.  (Id.)

Due to inclement weather, the December 21, 2010 hearing was rescheduled to February 10, 2011 at Teddy's Grill in Edgeley, North Dakota.  (NSP Ex. 30.)  At the February 10 hearing, one of the commissioners of the NDPSC thanked enXco for its thorough application.  (Dalton Decl., Ex. 45 (Transcript of Feb. 10, 2011 Hearing at 8).)   Also at the hearing, enXco informed the NDPSC that construction of the project should be completed in 2011, and that the project would be commercially operable by December 31, 2011.  (Id. at 33-34.)

On March 17, 2011, the NDPSC discovered that the hearing on enXco's CSC application was held in the wrong county and that a new hearing would have to be held in the correct county.  (NSP Ex. 34.)  Pursuant to statute, the NDPSC had to provide twenty days notice before holding the new hearing.  N.D. Cent. Code § 49-22-13(4); N.D. Admin. Code § 69-02-04-01.  enXco thereafter submitted a request for an expedited hearing.  In this request, enXco noted that the agreements between enXco and NSP regarding the Merricourt Project

provided the PSA had to close no later than March 31, 2011.  (NSP Ex. 34 at 2.)

"However, if a reconvening of the public hearing in this matter is required and

cannot occur until after March 31, 2011, under the agreements between enXco

and NSP, NSP can terminate the Purchase and Sale Agreement between the

parties, effectively terminating this Project, as set forth in the attached Affidavit

of Chris Sternhagen."  (Id. at 3.)  The NDPSC denied the request for expedited

hearing and set the new hearing for April 15, 2011.  (NSP Ex. 35 at 13.)  The April

15, 2011 hearing was also rescheduled to May 12, 2011 due to inclement weather.

(NSP Ex. 40 at 2.)  Ultimately, the NDPSC issued enXco the CSC on June 8, 2011.

(Id.)

In addition to the fact that enXco did not obtain the CSC by the Long-Stop

Date of March 31, 2011, the parties do not dispute that the PSA did not close on

or before that date.  (NSP Ex. 25 at Nos. 12 and 19.)  By letter dated April 1, 2011,

NSP informed enXco that it was exercising its right to terminate the PSA

pursuant to § 10.1(a)(I) of that agreement.  (NSP Ex. 42.)  NSP stated its reasons

for the termination, noting that the Closing had not occurred on or before the

Long-Stop Date and because conditions precedent to Closing were not fulfilled or

waived on or before the Long-Stop Date.  (Id.)   In addition, NSP further notified

8

enXco that because it was terminating the PSA, NSP was entitled to terminate the

EPCA pursuant to § 13.8.2 of that agreement.  (<u>Id.</u>; NSP Ex. 6 (EPCA § 13.8.2).)

Thereafter, enXco brought this action, asserting four counts: Declaratory

Judgment; Breach of Contract (Specific Performance-PSA); Breach of Contract

(PSA and EPCA); and Breach of Contract (Implied Covenant of Good Faith and

Fair Dealing) (PSA and EPCA).  By letter dated July 18, 2012, enXco notified NSP

of its intent to withdraw its claim for specific performance (Count II). (NSP Ex.

45.)

## II.     Standard for Summary Judgment

Summary judgment is appropriate if, viewing all facts in the light most

favorable to the non-moving party, there is no genuine dispute as to any material

fact, and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ.

P. 56(a); <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23 (1986).  The party seeking

summary judgment bears the burden of showing that there is no disputed issue

of material fact.  <u>Celotex</u>, 477 U.S. at 323.  "A dispute is genuine if the evidence is

such that it could cause a reasonable jury to return a verdict for either party; a

fact is material if its resolution affects the outcome of the case."  <u>Amini v. City of</u>

<u>Minneapolis</u>, 643 F.3d 1068, 1074 (8th Cir. 2011) (citing <u>Anderson v. Liberty</u>

Lobby, Inc., 477 U.S. 242, 248, 252 (1986)).

## III.    Analysis

In Count I, enXco seeks a declaration that 1) it was excused by reason of temporary impracticability from securing the CSC by the Long-Stop Date; 2) that an ITP is not a permit that enXco was required to obtain, hold, and assign as of the Long-Stop Date; 3) that there has been no Material Adverse Effect; and 4) that NSP had no right to terminate the PSA or EPCA.  (Am. Comp. ¶¶ 38-40.)

In Count III, enXco alleges that by terminating the PSA and EPCA on April 1, 2011, NSP breached its obligations under those agreements.  (Id. ¶ 48.)  enXco further alleges that NSP's subsequent statements that it deemed the agreements to be cancelled is a repudiation and breach of its obligations under those agreements.  (Id. ¶ 49.)  It is enXco's position that as a result, it has been damaged in the amount of $15 million with respect to the PSA and $230 million with respect to the EPCA.  (Id. ¶ 50.)

Finally, in Count IV, enXco alleges that when NSP sent notice of termination, NSP did so in bad faith, as the real reason NSP opted to terminate was because of the cost of the Merricourt Project.  (Id. ¶ 57.)  Such conduct was in breach of the implied duty of good faith and fair dealing set forth in the PSA and

EPCA. (<u>Id.</u> ¶ 59.)

## A.     Counts I and III - Breach of Contract

As noted above, enXco seeks a declaration that it was excused from securing the CSC by reason of temporary delay and that NSP breached the PSA and EPCA when it terminated those agreements on April 1, 2011, and later made statements that the agreements had been cancelled.  NSP asserts it is entitled to summary judgment as there is no evidence that NSP breached either agreement as the PSA clearly provides that if the Closing did not occur on or before the Long-Stop Date or if all conditions precedent were not fulfilled or waived on or before the Long-Stop Date, NSP could terminate the PSA upon written notice and could terminate the EPCA upon termination of the PSA.  (PSA § 10.1(a)(I); EPCA § 13.8.2).)

When interpreting the terms of a contract, the Court must give the contract language its plain and ordinary meaning.  <u>Edina Dev. Corp. v. Hurrle</u>, 670 N.W.2d 592, 598 (Minn. Ct. App. 2003) (citing <u>Brookfield Trade Ctr., Inc. v. County of Ramsey</u>, 584 N.W.2d 390, 394 (Minn. 1998)).  The terms must also be interpreted in the context of the entire contract and to give meaning to all of its provisions.  <u>Id.</u>

"In order to state a claim for breach of contract, the plaintiff must show (1) formation of a contract, (2) performance by plaintiff of any conditions precedent to his right to demand performance by the defendant, and (3) breach of the contract by defendant." Park Nicollet Clinic v. Hamann, 808 N.W.2d 828, 833 (Minn. 2011) (citing Briggs Transp. Co. v. Ranzenberger, 299 Minn. 127, 129, 217 N.W.2d 198, 200 (1974)).

A condition precedent is "any fact except mere lapse of time which must exist or occur before a duty of immediate performance by the promisor can arise." Carl Bolander & Sons, Inc. v. United Stockyards Corp., 298 Minn. 428, 433, 215 N.W.2d 473, 476 (1974). Further, "if the [fact or] event required by the condition [precedent] does not occur, there can be no breach of contract." 451 Corp. v. Pension Sys. For Policemen and Firemen, 310 N.W.2d 922, 924 (Minn. 1981). Accordingly, when a party fails to satisfy a condition precedent, the other party may be excused from performing under the contract. See Edina Dev. Corp., 670 N.W.2d at 598.

NSP asserts there is no dispute that the PSA did not close on or before the Long-Stop Date - March 31, 2011 - and that all conditions precedent were not fulfilled or waived on or before March 31, 2011. Based on these undisputed facts

12

and relevant Minnesota law, NSP asserts that enXco's contract claims have no merit.

enXco argues that only a condition precedent that is material to the parties' agreement will excuse the non-defaulting party of its remaining obligations.  In support, enXco relies on <u>Williston on Contracts</u> § 43.5 (4th ed. 2012):

> To the extent that the default results in the nonoccurrence of a condition precedent to the other party's duty of performance, this broad statement is essentially true, although even in this situation the nonoccurrence may be excused if it would result in disproportionate forfeiture, if the condition is a minor one and its nonoccurrence was caused by impossibility or impracticability, or if the other party has unjustifiably caused the condition to not occur.  However, modern courts, and the Restatement (Second) of Contracts, recognize that something more than a mere default is ordinarily necessary to excuse the other party's performance in the typical situation, subscribing to the general rule that where the performance of one party is due before that of the other party, such as when the former party's performance requires a period of time, an uncured failure of performance by the former can suspend or discharge the latter's duty of performance only if the failure is material or substantial.  Thus, if the prior breach of such a contract was slight or minor, as opposed to material or substantial, the nonbreaching party is not relieved of his or her duty of performance, although he or she may recover damages for the breach.

It is enXco's position that Minnesota follows the "modern rule" described in <u>Williston</u> - that only the nonoccurrence of a material condition precedent will excuse performance by a non-defaulting party.  <u>See</u> <u>LeMond Cycling, Inc. v. PTI Holding, Inc.</u>, Civ. No. 03-5441, 2005 WL 102969, at *4 (D. Minn. Jan. 14, 2005)

(noting that breach of contract requires plaintiff to prove material breach); <u>T/C Am. Monorail, Inc. v. Custom Conveyor Corp.</u>, 822 N.W.2d 812, 817 (Minn. Ct. App. 2012) <u>rev. granted</u> (Jan. 15 2013) (noting that Minnesota law provides that a breach must be material in order to excuse performance); <u>BOB Acres, LLC v. Schumacher Farms, LLC</u>, 797 N.W.2d 723 (Minn. Ct. App. 2011) (finding that failure to abide by original closing date was not a material breach).

enXco argues that failure to obtain and assign the CSC prior to the Long-Stop Date was not material to the parties' agreement, as neither party faced any risk by reason of a short delay in obtaining and assigning the CSC. There would not even be a delay in the date of commercial operation, which was December 31, 2011. Because obtaining the CSC was not the root or essence of the PSA, enXco argues that NSP was not excused from performing its obligations thereunder.

The Court notes that the cases relied upon by enXco are clearly distinguishable from this case. None involve contracts with conditions precedent or a specific provision allowing the other party to terminate the contract if a condition precedent is not satisfied. Rather, <u>LeMond</u>, <u>T/C Am. Monorail</u> and <u>BOB Acres</u> stand for the unremarkable proposition that a breach must be material in order to excuse performance by the non-defaulting party. After reviewing

numerous decisions and cited treatises, the Court must reject enXco's position,

that only the nonoccurrence of a material condition precedent will excuse

performance by a non-defaulting party, because such position is contrary to well-

settled law that recognizes a distinction between covenants to a contract and

conditions precedent.

"Unlike a mere contract term, the breach of which must be material before

it excuses another party from performing, one party's failure to fulfill a condition

precedent entirely excuses any remaining obligations of the other party." AIG

Centennial Ins. Co. v. Fraley-Landers, 450 F.3dd 761, 763 (8th Cir. 2006) (citing

Richard A. Lord, Williston on Contracts § 38:7 (4th ed.1990); Restatement

(Second) of Contracts § 224 (1981)). See also Crossroads Church of Prior Lake v.

County of Dakota, 800 N.W.2d 608, 615 (Minn. 2011) ("Under general contract

law, unfulfilled conditions prevent enforcement of a contract."); National City

Bank v. St. Paul Fire & Marine Ins. Co., 447 N.W.2d 171, 176-77 (Minn. 1989) ("[I]f

the [fact or] event required by the condition [precedent] does not occur, there can

be no breach of contract.") See also, McArthur v. State Farm Mut. Auto. Ins. Co.,

274 P.3d 981, 988 (Utah 2012) (citing 8-30 Corbin on Contracts § 30.12) (finding

that "conditions precedent in a contract must have been met or fulfilled before

15

any covenants arise . . . [and] where a condition precedent has not been fulfilled, there is no contract or covenant to breach and thus no need to consider materiality or prejudice."); Richard A. Lord, 13 <u>Williston on Contracts</u> § 38:12 ("Since an express condition . . . depends for its validity on the manifested intention of the parties, it has the same sanctity as the promise itself.  Although the court may regret the harshness of such a condition, as it may regret the harshness of a promise, it must, nevertheless, generally enforce the will of the parties unless to do so will violate public policy.")  Accordingly, the Court finds that it is not necessary to determine whether a party's failure to fulfill a condition precedent was material to the parties' agreement before excusing any remaining obligations of the other party.

Here, the PSA provides that NSP's obligation to consummate the transactions contemplated by the Agreement was "subject to fulfillment at or prior to the Closing of **each of the following conditions, except to the extent [NSP] waives such fulfillment in writing:"** (NSP Ex. 5 (PSA Article 3) (emphasis added).)  The condition precedent relevant here required enXco to obtain and transfer to NSP all final and non-appealable permits from the NDPSC, which included the CSC, by the Long-Stop Date.  (<u>Id.</u> PSA at §§ 3.7, 6.11 &

Schedule 6.11.)   Because enXco did not obtain a final, non-appealable CSC prior to the Long-Stop Date, the PSA allowed NSP to either provide written notice of termination or waive the condition.   (Id. § 10.1(a)(I).)

In an attempt to avoid this clear and unambiguous contract language, enXco presents a number of additional arguments, including waiver, temporary impossibility and forfeiture.  For the reasons discussed below, however, the Court finds that enXco is not entitled to relief based on these additional arguments.

### 1.    Waiver

enXco asserts that NSP waived the requirement that enXco obtain the CSC prior to the Long-Stop Date.  Pursuant to Minnesota law, "a waiver is 'the intentional relinquishment of a known right.'" Valspar Refinish, Inc. v. Gaylord's Inc., 764 N.W.2d 359, 367 (Minn. 2009) (quoting Carlson v. Doran, 252 Minn. 449, 456, 90 N.W.2d 323, 328 (1958)).  "Waiver is generally a question of fact, and '[i]t is rarely to be inferred as a matter of law.'" Id.

> Waiver "is essentially unilateral and results as a legal consequence from some act or conduct of the party against whom it operates, without any act of the party in whose favor it is made being necessary to complete it."  Knowledge and intent are essential elements of waiver.  But "[t]he requisite knowledge may be actual or constructive and the intent to waive

> may be inferred from conduct." When a party acts in a way that is
> inconsistent with the terms of a contract, a fact finder can reasonably
> conclude that a party waived those contractual provisions.

Id. (internal citations omitted).

First, the PSA explicitly requires that any waiver of a condition precedent be in writing.  (NSP Ex. 5 (PSA Art. 3).)  The parties agree that no such writing exists.   In fact, enXco executive Tristan Grimbert testified that NSP did not waive any requirement set forth in the PSA.  (NSP Ex. 53 (Grimbert Dep. at 85-86).) However, enXco asserts that NSP waived the requirement by course of conduct, as set forth in the declaration of Chris Sternhagen.  Sternhagen asserts that one of NSP's managers on the Merricourt Project, Jerry Dittman, indicated to him that with respect to previous projects, enXco did not transfer the site permit to NSP until after the closing date.  (Sternhagen Decl. ¶ 5.)  Dittman further indicated that the parties could follow a similar process with respect to the Merricourt Project.  (Id.)  Assuming Dittman made such a statement, it is not evidence that NSP waived the requirement that enXco obtain the CSC by the Long-Stop Date, only that NSP would waive the requirement that the CSC be transferred to NSP by that date.  In addition, to prove an effective waiver, enXco must present evidence of knowledge and intent to waive the contractual requirement that a

waiver must be in writing.  See Residential Funding Co. v. Terrace Mortg. Co.,

850 F. Supp.2d 961, 968 n.7 (D. Minn. 2012) (citing Pollard v. Southdale Gardens

of Edina Condo. Ass'n, Inc., 698 N.W.2d 449 (Minn. Ct. App. 2005) (finding no

evidence that plaintiff waived the contractual limitation that a waiver be in

writing).  The Court thus finds that the terms of the PSA required enXco to obtain

the requisite CSC by the Long-Stop Date, and that NSP did not waive such

requirement.

### 2.    Temporary Impracticability

enXco also argues that its nonperformance of the conditions precedent may

be excused because it was temporarily impossible for enXco to obtain and

transfer the CSC prior to March 31, 2011.  The parties do not dispute that severe

winter weather forced cancellation of the first hearing scheduled to address its

CSC application and that the second hearing had to be rescheduled because it

was held in the wrong county.  It is enXco's position that these events were not

foreseeable and were the only reason the CSC was not issued before March 31,

2011.

Generally, the doctrine of temporary impossibility has been recognized as

a defense to a breach of contract claim.  See, e.g., Village of Minneota v.

Fairbanks, Morse & Co., 226 Minn. 1, 12-13, 31 N.W.2d 920, 926 (1948); Pac.

Trading Co. v. Mouton Rice Milling Co., 184 F.2d 141, 148 (8th Cir. 1950).  It is

NSP's position that this doctrine cannot be used offensively.  See Prescott & Co.

v. J.B. Powles & Co., 193 P. 680 (Wash. 1920) ("Had respondent been sued for

damages for failure to ship the full order, this act by the government might have

afforded a defense; but, having sued on the contract, it is essential to a recovery

that a full performance be shown, and no excuse not provided for in the contract

will justify a recovery, where the performance is partial only, save only an act of

the buyer rendering performance impossible, or a waiver by it.").  See also Little

Canada Charity Bingo Hall Ass'n v. Movers Warehouse, Inc., 498 N.W.2d 22, 25

(Minn. Ct. App. 1993) (finding that frustration of purpose defense cannot be used

as a shield when it is the opposing party's purpose that has been frustrated).

    NSP argues that using the doctrine of temporary impracticability

offensively is improper, as it conflicts with the element of a breach of contract

claim that requires proof of "performance by plaintiff of any conditions

precedent to his right to demand performance by the defendant."  Park Nicollet

Clinic, 808 N.W.2d at 833.  In other words, enXco cannot sue for breach of

contract despite conceding that it did not satisfy all conditions precedent.

NSP further argues that the doctrine of temporary impracticability has no application here because under Minnesota law, a party that undertakes to fulfill a condition assumes the risk that fulfillment of that condition will be prevented, even if the contract does not expressly say so.  D.H. Blattner & Sons, Inc. v. Firemen's Ins. Co. of Newark, N.J., 535 N.W.2d 671, 676 (Minn. Ct. App. 1995) ("Where the parties' contract fails to provide against a foreseeable risk, they are deemed to have tacitly allocated the risk to the promisor." ).  Also, where a condition precedent requires the cooperation of a third party, Minnesota law provides that "a promise which cannot be performed without the consent or cooperation of a third party is not excused because of the promisor's inability to obtain such cooperation."  St. Paul Dredging Co. v. State, 107 N.W.2d 717, 723-24 (Minn. 1961).  Where the condition precedent involves obtaining a license or permit, "[t]he risk of inability to obtain it is on him; and its refusal by the government is no defense in a suit for breach of contract."  6 Corbin on Contracts § 1347 (rev. ed.).

enXco again argues that NSP misstates the law, and that courts have found that a plaintiff can pursue a claim for damages based on the theory of temporary impracticability.  See, e.g., Grenier v. Compratt Const. Co., 189 Conn. 144, 454

A.2d 1289 (Conn. 1983); <u>Hoosier Energy Rural Elec. Co-op, Inc. v. John Hancock</u>

<u>Life Ins. Co.</u>, 588 F. Supp.2d 919 (S.D. Ind. 2008) <u>aff'd</u> 582 F.3d 721 (7th Cir. 2009).

In <u>Hoosier</u>, the plaintiff sought to enjoin the insurance provider and credit

swap provider from asserting default and demanding performance of a "sale in,

lease out" transaction.  Plaintiff asserted that due to the extraordinary credit crisis

of 2007-2008, it was unable to replace an entity as a credit swap partner within

the sixty days provided in the relevant agreement.  Plaintiff further asserted that

if it was not given additional time to meet its obligations, it would suffer

significant losses.  In its motion for preliminary injunctive relief, the plaintiff

asserted two claims, one of which was "temporary commercial impracticability."

Applying New York law, the district court granted the plaintiff's motion,

finding that plaintiff had demonstrated a likelihood of success on the merits of its

claim of temporary commercial impracticability, which was based on an

unprecedented and unforeseeable economic crisis.  <u>Id</u>. at 932.  The court further

noted that injunctive relief was appropriate, as plaintiff was not asking to be

excused from performance, only that it be given a reasonable amount of time to

perform - ninety days.  <u>Id.</u>

The Court finds that <u>Hoosier</u> is not applicable here, as the doctrine was

used in the context of a motion for preliminary injunctive relief - to prevent the termination of a contract.  In this case, the contracts at issue have been terminated, and the doctrine of temporary impracticability has been asserted offensively to support a claim for damages - not in support of injunctive relief.  In addition, <u>Hoosier</u> was decided under New York law, which applies the doctrine of commercial impracticability very narrowly.[6]

Although no Minnesota court has addressed the issue of whether the doctrine of temporary impracticability can be used to support a claim for damages, the Court finds that, based on the unique facts of this case and the relevant terms of the contracts at issue, Minnesota law would not support use of the doctrine to support a claim for damages.

enXco is a sophisticated commercial entity that has entered into many projects involving wind projects and other renewable energy.  Accordingly, the Court can reasonably infer that enXco is knowledgeable of the varying risks that may arise with respect to such projects.  In addition, the parties negotiated the

---

[6]The Court notes that on appeal, the Seventh Circuit affirmed the order granting preliminary injunctive relief, but questioned the merits of the temporary commercial impracticability claim under New York law.   <u>Hoosier Energy Rural Elec. Co-op, Inc. v. John Hancock Life Ins. Co.</u>, 582 F.3d 721, 729 (7th Cir. 2009).

terms of both contracts over the course of several months.  (NSP Ex. 7 (Peluso

Dep. at 136-37).)  The contract terms relevant to the present motion are also clear

and unambiguous.  Pursuant to §§ 3.7 and 6.11 of the PSA, enXco agreed to

obtain all necessary permits, including the CSC, for the Merricourt Project on or

before the Long Stop Date, which was March 31, 2011.  In addition, enXco agreed

to the language in § 10 of the PSA that allowed NSP to terminate the contract if

all conditions precedent, including the requirement to obtain all necessary

permits, were not fulfilled or waived on or before the Long Stop Date.  The

contract did not provide any limitations on NSP's right to terminate in the event

a condition precedent was not fulfilled or waived.  By agreeing to these terms,

enXco assumed the risk that any one of the conditions precedent could not be

fulfilled or waived.  D.H. Blattner & Sons, Inc., 535 N.W.2d at 676 (holding that a

party that undertakes to fulfill a condition assumes the risk that fulfillment of

that condition will be prevented, even if the contract does not expressly say so).

Based on these undisputed facts and the applicable law, the Court finds that

enXco cannot base its claim for damages on the doctrine of temporary

impracticability.

### 3.    Forfeiture

enXco further argues that its failure to obtain and transfer the CSC by the Long-Stop Date should be excused because enforcement of that requirement - and allowing NSP to terminate - will cause disproportionate hardship to enXco. Hideaway, Inc. v. Gambit Invs., Inc., 386 N.W.2d 822, 824 (Minn. Ct. App. 1986). See also Trollen v. City of Wabasha, 287 N.W.2d 645, 648 (Minn. 1979) (city's conduct of terminating lease, based on lessee's failure to provide timely notice to renew, was actionable as the delay was slight and the loss to the city was small compared to loss to lessee).  enXco argues that in this case, NSP faced no consequence from a delay in closing and was protected from any loss by the provision "Delay Liquidated Damages" in the EPC § 6.12.  (NSP Ex. 6.)  On the other hand, termination of the PSA would be devastating to enXco.  For example, much of its loss is tied to the value of the wind turbines it purchased for the Merricourt Project - at a cost of $2.16 million each.  (Dalton Decl., Ex. 81.) According to NSP's experts, the current value of the turbines are between $1.13 and $1.23 million each.  (Id. Ex. 47 (Expert Report of Paul Maxwell at 34).) enXco's out-of-pocket loss for the turbines is thus between $93 and $103 million.

NSP asserts that the law of forfeiture applies only in the absence of

conditions precedent.  <u>DeValk Lincoln Mercury, Inc. v. Ford Motor Co.</u>, 811 F.2d

326, 336 (7th Cir. 1987) (finding that under Michigan law, the substantial

performance rule, which is derived from the maxim that the law abhors

forfeiture, applies only in the absence of conditions precedent).  <u>See</u> <u>also</u>

Restatement (Second) Contracts § 229, cmt. c (recognizing that forfeiture will not

apply where occurrence of the condition was a material part of the agreed

exchange).  In addition, NSP asserts that forfeiture is used as a defense, but what

enXco is attempting to do in this case is extract a forfeiture of hundreds of

millions of dollars from NSP.  enXco stills owns the Merricourt site, and hopes to

sell it one day.  Also, the wind turbines at issue have been redeployed to a

different wind turbine project that enXco anticipates will be profitable.  (NSP Ex.

51 (Schild Dep. at 214-15) Ex. 41 (Ficca Dep. at 174-75).)  Based on these facts, NSP

asserts enXco will not suffer a disproportionate forfeiture if unsuccessful in this

action.

　　　enXco does not dispute the evidence that it was able to redeploy the

turbines to a different wind project and that it may sell the Merricourt site in the

future.  In addition, enXco conceded in its opposition brief that the market for

wind projects had dropped by 2010, and that projects comparable to Merricourt

could be purchased for as much as one third less ($100 million) than the contract

price for the Merricourt Project.  (Doc. No. 95).  Based on the above, the Court

finds that enXco has not experienced a disproportionate forfeiture due to the

termination of the contracts at issue.

NSP has demonstrated there are no genuine disputes as to any material

fact and that NSP is entitled to judgment as a matter of law on enXco's claims

that NSP breached the PSA and/or EPCA when it terminated those contracts on

April 1, 2011.

### B.     Count IV - Breach of Good Faith and Fair Dealing

enXco asserts that there is an implied covenant of good faith and fair

dealing in the PSA and EPCA.  enXco further asserts that NSP breached this duty

when it terminated the contracts in bad faith, because the real reason the

contracts were terminated was due to the cost of the Merricourt Project.  (Am.

Comp. ¶¶ 56-58.)  NSP asserts that it is entitled to summary judgment on this

Count as it had valid grounds to terminate the PSA and EPCA.

NSP asserts that this claim should be dismissed because it had a valid

contractual ground upon which to terminate the agreements.  For purposes of

this motion, NSP addresses only one of the allegations raised by enXco in

support of this claim - that NSP did not exercise reasonable discretion with respect to the form and substance of the CSC.  NSP asserts that this argument defies logic because NSP could not complain about the substance and form of the CSC at the time it terminated the PSA, because the CSC had not been issued at that time.  NSP further argues that enXco cannot use the duty of good faith and fair dealing to negate an express right to terminate the contract.  Burnette Techno-Metrics, Inc. v. TSI Inc., 44 F.3d 641, 643 (8th Cir. 1994) ("The implied covenant of good faith and fair dealing does not limit [defendant's] right to act in accordance with the bargained-for terms of the agreement.")  See also Sterling Capital Advisers v. Herzog, 575 N.W.2d 121, 125 (Minn. Ct. App. 1998) (finding that under Minnesota law, a party "does not act in bad faith for asserting or enforcing its legal and contractual rights."); United States v. Basin Elec. Power Coop., 248 F.3d 781, 796 (8th Cir. 2001) (finding that the implied covenant of good faith has "nothing to do with the enforcement of terms actually negotiated").  Because NSP had the contractual right to terminate the PSA and EPCA because all conditions precedent set forth in Article 3 of the PSA had not been fulfilled or waived by the Long-Stop Date, enXco's claim that the termination was made in bad faith and in violation of an implied covenant of good faith and fair dealing has no merit.

28

enXco did not respond to this aspect of NSP's motion in its opposition brief.  At oral argument, enXco conceded that if NSP was no longer taking the position that it had the right to terminate based on § 3.7  - that all Seller Permits shall be in the form and substance reasonably satisfactory to NSP - summary judgment as to Count IV is appropriate.  As it is NSP's position that the right to terminate is based on the fact that enXco did not obtain the CSC by the Long-Stop Date - not that its form or substance was not satisfactory, the Court will grant summary judgment as to Count IV.

**IT IS HEREBY ORDERED** that Defendant Northern States Power Company's ("NSP") motion for summary judgment [Doc No. 71] is **GRANTED.** This matter is hereby dismissed with prejudice.  The parties motions to exclude expert testimony [Doc. Nos. 60, 64 and 78] are dismissed as moot.

**LET JUDGMENT BE ENTERED ACCORDINGLY**

Date:   April 3, 2013

s/ Michael J. Davis
Michael J. Davis
Chief Judge
United States District Court